Judge Carr:
In April 1803, Margaret West, and the appellant, being. man and wife, a separation, by mutual consent, took place between them; as appears by a letter from the appellant to John Hook, the father of his wife. This letter gave the father considerable offence, if we may judge from some marginal notes, proved to be in his hand-writing. The separation between West and his wife, was permanent. It is said they lived about fifty miles apart.
On the 29th of May, 1808, John Hook, made his will, having five children, he gives to each a fifth part of his estate, deducting the different sums he had advanced to them respectively, (which he names in the will.) To the other four children, the devises are made directly; vestingin the devisee, the clear legal title. The devise to his daughter Margaret, is in the following words; “ And the remaining one-fifth, I give to my executors, for the benefit of my daughter Margaret West, at the discretion of my executors, subject to a deduction of 2001. paid Thomas West, which said 200f. I desire my executors may institute a suit for; and provided the same may bé recovered, my executors are requested to dispose of the same, to my daughter Margaret West, to be disposed of at her discretion.”
After the death of the father, a division of the estate took place, and Margaret’s share of the personalty was put into her possession, and remained with her constantly afterwards'. She also purchased a tract of her father’s land, which was charged to her in the division; but no conveyance was ever made.
On the 1st of January, 1822, Margaret West made her will in the usual form, which, in the July after, was offered for probate to the County Court of Bedford. That *375 Court admitted it to probate, and the husband, who contested its admission, appealed. The Superior Court affirmed the judgment; and the husband again appealed.
Two grounds of opposition to the will were taken: 1st, as to the ability of the testator, in fact, to make a will: 2d, as to her competency in law. The first point was properly abandoned; for it is clear, from the evidence, that she was of sound and disposing mind.
The second is a more difficult question. I will enquire, 1st, could Mrs. West moke a will of personals? 2d, as to real estate?
It is certainly a general rule, that a feme covert cannot make a will; but to this rule there are some exceptions. She may make a will of every thing she is entitled to in autre droit, as where she is executrix; but nothing will pass, but by a pure right of representation to the former owner. For, if the property is reduced into possession, from that moment it becomes the property of the husband, and cannot pass by the will. She may also make a will of her choses in action not reduced into possession, and chattels real; but if the husband does not assent to the proof of the will, it will be void, and cannot be proved. If he does assent, either by matter ex post facto the death of the wife, or by previous contract, that entitles the executor of the wife to claim those things which would have been the husband’s, as administrator. Per Lord Thurlow, in Hodsden v. Loyd, 2 Br. C. C. 534. So, where there is an agreement between husband and wife, before marriage, that the wife shall have to her separate use, either the whole, or particular parts, of her personal estate, she may dispose of. it by an act in her life, or by will; and she may do it by either, though nothing be said of the manner of disposing of it. Peacock v. Monk, 2 Ves. 190. So, by a devise, a married woman may acquire a separate interest, without the intervention of trustees; and the legal estate devolving on the husband, he will be decreed a trustee for the wife. Bennett v. Davis, 2 P. W. 316. So, a legacy to a feme *376 covert, “ her receipt to be a sufficient discharge to the ex ecu tors,” gives it to her sole and separate use, and makes the husband a trustee for her; and a present to the wife by ^le husband’s father, or even by a stranger, during the coverture, has been considered a gift to her separate use. Graham v. Lord Londonderry, 3 Atk. 393. In Hearle v. Greenbank, 1 Ves. 301, Lord Hardwicke says, “ In case of personal estate given to a feme covert, it is a rule of the Court, that she may dispose of it.” In Fettiplace v. Gorges, 3 Br. C. C. 8, the Lord Chancellor says, “ All the cases shew, that the personal property, when it can be enjoyed separately, must be so, with all its incidents, and they ms disponendi is one of them.” In Rich v. Cockell, 9 Ves. 369, it is said, that “ the disposition by will is incident to a trust for the separate use of a feme covert; and the husband, having taken a transfer of the property, is held a trustee for the wife.” Cases without number, might be cited, to shew that this is the settled law on the subject.
Let us enquire now, whether the devise to Mrs. West operated to give her the sole and separate use of the property. And here it is proper to recollect the state of things under which the will of her father was made. His daughter had been five years in a state of separation from her husband; and that separation attended by circumstances, which (whether justly or not) seem to have caused considerable irritation against the husband, in the old man’s mind. He gives to his other four children, directly, four-fifths of his estate; “and the remaining one-fifth, I give to my executors, for the benefit of my daughter, Margaret West, at the discretion of my executors.” If the clause had even stopped here, it does not seem to me, that there could have been a rational doubt, that the intention was to exclude the marital rights. Here is an express trust raised; the legal estate vested in executors, for the benefit of his daughter. But the residue of the clause adds “ confirm mation strong,” to this construction. He directs his exe *377 eulors to sue West for the 2001. which he had received, in part of his wife’s fortune; and that, if recovered, it shall go to his daughter. Now, while he was thus, with a spiril even vindictive, directing a prosecution against the husband, for the small portion which had gone into his hands; it is impossible to suppose, that he intended to give that same husband the control and enjoyment of the whole property he was about giving to his daughter. I have no doubt, therefore, that this was the separate estate of Mrs. West; that as to it, the marital rights never attached; and that her jus disponencli was perfect, so far as related to the personalty, whether it consisted of the specific chattels she received, or the fruits and produce of those chattels, made by her own care and attention; for she had the same power over the produce, as over the principal; or as the Lord Keeper expresses it, in Gore v. Knight, 2 Vern. 535, “ the sprout is to savour of the root.”
Let us now examine the legal ability of Mrs. West to devise her real estate. There can be no doubt that tiiis was as much her separate estate, as the personal, and I presume, as free from the marital rights. For the husband, I apprehend, cannot be tenant by the curtesy; having had, during the coverture, neither a legal nor an equitable seisin; one of which Lord Hardwicke considers, absolutely necessary to entitle him; Hearl v. Greenbank, 1 Ves. 301; a case precisely like the present, so far as regards this point. I state this to shew, that the appellant can have no interest in this part of the case. If the will be void as to the land, it must descend to her heirs; and from the best examination I have been able to give this subject, I am brought to the conclusion, that as to the land, it is void. I do not mean to say, that a feme covert cannot, in any case, or by any means, make a testamentary disposition of lands; but that in this case, the precautions necessary to enable her to exercise that power, have not been taken. If a woman, having land, shall, before marriage, by proper conveyance, or after marriage, by line, convey her land to trustees in *378 trust for herself during coverture, for her separate use, and afterwards that it shall be in trust for such person as she shall, by any writing under her hand and seal, or in nature a appoint, and in default of such appointment, to her heirs; and she afterwards makes such appointment; that will be a good declaration of a trust. Peacock v. Monk, ubi supra. Whoever takes under such declaration, takes by virtue of the execution of the power, and as if the limitation in that writing of appointment, had been contained in the deed creating the power. Southby v. Stonehouse, 2 Ves. 610. So the feme may dispose of her estate, by way of power over an use; as if she conveyed the estate to the use of herself for life, remainder to the use of any person, whom she, by any writing, Ike. should appoint; and in default of such appointment, to her ovvn right heirs. This power, thus reserved, she may execute. 2 Ves. 191. These, Lord Hardwicke, seems to think, are the only modes in which a woman can dispose of land, during coverture. Where the legal estate remains in her, and there is only an agreement between herself and husband, that she may dispose of the land by deed or will, Lord Hardwicke, Lord Thurtow, and the writers on the subject, consider that such disposition, though it may bind the husband, will be clearly void against the heir. Peacock v. Monk, Heart v. Greenbank, Hodsden v. Loyd, ubi supra; 1 Madd. Ch. 375. So also, if land be devised to a feme covert, she has no power to dispose of it, though given to her sole and separate use, unless the devise contain a declaration, giving her an express power to appoint, by deed or will, the person who shall take, notwithstanding her coverture. See the cases cited above.
Our case comes within this rule; a devise merely to executors for Mrs. West’s benefit, without atiy thing like a power of appointment to her. I consider the will, therefore, so far as it concerns the land, void". I had doubted at first, whether it was necessary for us to meddle with the decision of the Court, of probate, on this ground; as the *379 will was properly admitted as a will of personals, and probate not being necessary to give it validity as a will of lands, Bagwell v. Elliott, 2 Rand. 190, I had concluded, that neither could probate give to it an effect which did not intrinsically belong to it: therefore, that it vas on the same ground as in England, where the Court of King’s Bench refuse a prohibition to the Ecclesiastical Court, in case of a will of real and personal estate, the probate being proper as to the personalty, and as to the realty, adding no evidence either for or against the will, because a proceeding coram non judice. 2 East. 551; Salk. 552. Hut our statute directing generally that wills shall be proved, and after probate, that they shall only be contested by hill, and that not after seven years, it might, perhaps, if wo suffer the probate to stand, have the effect of precluding some party hereafter, from contesting it; and as it is a void thing, so far as it relates to the land, I think it best that the probate, so far, be set aside.
Judge Green:
I think the necessary construction of John Hook’s will, is, that he gave to his executors one-fifth of his estate, for the separate use of his daughter, Mrs. Vest, a married woman, subject to a deduction of 200/. paid to her husband. They were to hold it for her benefit, at their discretion; a discretion which could not have been vested in them, for any purpose, but to prevent her improvident use of it, and to preserve the property from the marital rights of her husband. To the exercise of this discretion, according to the intention of the testator, it was necessary that the legal title to the property, real and personal, should remain in the executors, at least as long as West and his wife both lived; so that this use would not be executed, even if any use raised by will, is executed by our statutes. If the executors had conveyed the legal title to the land and personal property in Mrs. West’s share, to her, so that *380 at law, her husband’s marital rights would have attached upon it, a Court of Equity would have held him a trustee f°r her? in respect to her right to the separate use of both descriptions of property.
At all times, a feme covert executrix, had a power to malte a testament, and appoint executors, who should be the executors of the first testator; and this without the consent of the husband. Scammell v. Wilkinson, 2 East. 552. This power to continue the representation of the testator, was implied in the appointment of every executor. But she could make a will to no other purpose, with,out the consent of her husband. Her will so made had no effect, but to continue the office of executor. She, as well as an executor, had no power to bequeath the goods of the testator. With his assent, she might make a testament of her choses in action, or even of the personal property of the husband. But to give validity to a will so made, the husband must assent to the will, after her death. Upon these conditions, the will of'a feme covert had, at law, all the effect of a will made by one sui juris. The reason why this effect was given to a testament of personals, made with the assent of the husband, was, that if the wife died intestate, the husband succeeded to all her personal rights, as administrator, and her will, if it had any effect, operated to his prejudice; and therefore, there was, in that case, no danger that he would coerce the will of his wife, by the exercise of that unbounded influence over her. will, which the law attributes to every husband.
But as to realty, the husband could not enable his wife whilst covert, by his assent, or by any other means, to pass the legal title to such property, by devise; and the reason seems to be, that as the property would not devolve on him upon her death, by operation of law, if he could in any way give a legal effect to her devise, there would be the strongest temptation to control the will of his wife; and if he did not cause the property to be devised directly to him, he would generally cause it to be given to some *381 one, upon a secret trust for himself, or at all events, according to his will, and not hers. The husband could indeed get a title to his wife’s property by fine, or fine and recovery; but in that case, she had the protection of the Courts of Justice, by privy examination, which she could not have in making a will. Accordingly, even before the statute of wills of lien. 8, when lands were devisable by custom in particular places, it was decided, that a custom, for a feme eovert to devise lands, was void, “ because of the presumption that the law has, that it will be made by the constraint of the husband.” This was decided in 3 Ed. 3, and that decision was held to ho good law in Forse and Hembling’s Case, 4 Co. 61, and to be applicable to cases arising after the statute of wills.
A woman might, however, before her marriage, or after marriage, with the concurrence of her husband, and by fine, settle her real property in such a way, as to dispose of it in her life-time, or by will, by way of appointment; and so any other might give her a power of appointment, to be exercised in any way which he might prescribe. This power of appointment might exist, either as to the legal title or over an use. In such cases, the appointee of a feme covert took the estate, not under the appointment, but under the original settlement. There is no ease, in which a feme covert has been held to be capable of passing real estate by will, unless where there was an express power of appointment given to her, A feme covert, having a separate property, has the same power over the produce of it, as she has over the capital; Gore v. Knight, 2 Vern. 535; and she may dispose of personal property, in which she has a separate use, by will, without any express power of appointment. Yet if she invests the personal property, or its produce, in lands, she cannot devise such lands, unless by virtue of an express power. This was the case of Peacock v. Monk, 2 Ves. 190, (in 1750.) The case is imperfectly reported; but I gather from the observations of the Court, that by agreement between the husband and, *382 wife, before marriage, she was to have the separate use of ]ler property, with a power to dispose of it by will or otherwise. She purchased real property with the produce of ^er separate property, and devised it by will. It was determined that this property did not fall within the power; and if it did, that such an agreement, not being carried into effect by a proper conveyance, could not give her a power to devise real estate. At the end of this case, it is slated, that Wittes, Chief Justice, had determined, upon consultation with the other Judges, that when land was settled to the separate use of a feme covert generally, without any power to devise it, her will of such land was void; and this last principle has never been departed from, so far as I am informed. In Wright v. Englefield, Ambl. 468, and the same case by the name of Wright v. Cadogan, 6 Bro. P. C. 156, (in 1766,) it was determined, in a case where a woman being entitled to a trust in real estate, and about to marry, it was agreed between her and her intended husband, that her property should remain to her separate use, and that she might dispose of it by will, that her disposition, by will, of this trust, was valid; because the agreement was a declaration of trust, and had the same effect as to the trust, as a conveyance would have had of the legal title, if that had been vested in her; the appointee taking under the declaration of trust, and not by the will: that this declaration of trust was all that it was in the power of the parties to do, and had the same effect as the conveyance of the legal title would have had, if that had been vested in her. In Rippon v. Dowding, Ambl. 565, this doctrine was carried further, and applied to the case of an agreement by the husband, before marriage, that the wife might dispose by will of real estate, in which she had a legal title; upon the idea that a Court of Equity might have compelled a specific execution of the agreement, by ordering a settlement according to the agreement. But this case was virtually over-ruled, by Hodsden v. Loyd, 2 Bro. C. C. 534, where it was said that such agreement could not *383 enable a feme covert to devise her land. That case, however, went off upon another point; that the will being made before the marriage, was revoked by it. Before the case of Hodsden v. Loyd, and after the case of Rippon v. Dowding, the case of George v. --, Amb. 627, was determined. This was a case at law. A widow being seised in fee of copy-hold lands, surrendered to the use of her will; and afterwards, and previous to her marriage with a second husband, he agreed, by articles, that she might, during the coverture, devise her estate. She devised the copy-hold land during coverture; and her heir recovered in ejectment against her devisee; the Court unanimously declaring, that being a feme covert, she could not make a will, or declare the uses of the surrender. Since this case, and before that of Hodsden v. Loyd, the case of Compton v. Collinson, has been determined in the Court of Common Pleas, (in 1790,) upon a case sent out of Chancery, for the opinion of that Court. A husband and wife agreed to live separate; and ho covenanted with trustees, that he would join the wife in any fine and recovery, of any estate which might come to her, during the coverture, to any uses she should appoint; and the trustees covenanted to indemnify him against her debts, trespasses, &c. ' After the separation, free-bold and copy-hold estates descended to the wife. She surrendered her copy-hold estates to the use of her will, and devised them to W. who was admitted. The Court certified that the deed of separation, surrender, will and admittance, gave a good title to the devisee; and this was confirmed by the Chancellor. I conjecture that this case turned on the peculiar character of the copy-hold property, 1 Fonb. Eq. 113; the surrender being good without his joining in it, and that being necessary only to support Ills interest in her estate. Most of these oases, 1 have only seen in abridgments, and in references to them in other hooks, not having convenient access to the books in which they are reported at large. I have not thought it necessary to spend the time that would be requisite to examine *384 the reports at large. Because, upon whatever principles these seemingly conflicting cases turned; and whether the one °r the other class of those cases, have been decided upon the most correct principles; they do not affect the decisión of the question in this case. For, in all of them, there was an express power by agreement, before the marriage, given to the wife to dispose of the property by will, except in the case of Compton v. Collinson, which probably turned upon the peculiar character of the property, in respect to the mode of conveying it. None of these cases contradict the proposition laid down in Peacock v. Monk, and the case there referred to, that a wife cannot dispose, by her will, of lands settled to her separate use, or in which she has a separate use, unless a power be given to her for that purpose, by some means or other. In the case at bar, no power was given to the wife, to dispose of the land in any form, in her life-time, or by will. On the contrary, the power to the executors to apply the property for the benefit of Mrs. West, at their discretion, was totally inconsistent with the existence of a power in her, to dispose of it in any way, during her life, without their consent. Indeed, I can see no reason, if a married woman can devise land, of which she is entitled to the separate use during her life, and in which she has an inheritance, merely because she has such separate use, why she should not also, for the same reason, have the same power to devise any land, to which she is entitled? For, all land is her separate property, and her devise of it, cannot prejudice her husband, in cases where he is not entitled as tenant by the curtesy; and in cases in which he is so entitled, the devisee might take subject to his right, as the devisee of the husband takes subject to the wife’s dower. If another, or the wife before marriage, whilst sui juris, or after marriage, under the protection of the Courts, and after privy examination, chooses to create such a power, it must be carried into effect, because cujus est dare, ejus est disponere. But such a power ought not to be presumed, from the mere fact of *385 lier having a separate use given to her. I think the cases have gone far enough, in breaking down the guards originally provided by the law, to protect the imbecility of femes coverts. Nor ought the circumstance of husband and wife living separate, to make any difference in this respect. A father may have strong motives to give to his. married daughter lands for her separate use, even when she and her husband live together upon the best terms; and to lay down a general rule in such cases, that she might dispose of property so given, by her will, would be to subject; the wife to the coercion of her husband, and to enable him to make the property his own. The rule must be general, whether it is established in one way or the other. It would be of the most mischievous consequence, for, the Court to undertake to determine that the will was valid or void, according to the degree of coercion or influence exercised by the husband, in each particular case.
I think, therefore, that Mrs. West's will was void as to the real property, which the executors took in trust for her, under her father’s will, or which she may have purchased with the separate personal property given to them, in trust for her.
As to the personal property which Mrs. West acquired under her father’s will, and the increase and produce of it, remaining in personalty, at the time of her death, she had a clear right to dispose of it by will. 2 Vern. 328, (1695;) Herbert v. Herbert, Prec. in Ch. 44, (1692;) and in Hearl v. Greenbank, 1 Ves. 298, a feme covert, having a separate personal property, without any express power to dispose of it by will, was held to have such a power, as a consequence of her jus disponendi; which is said in Fetliplace v. Gorges, 3 Bro. Ch. Cas. 8, to be necessarily incident to the separate property. This doctrine has never since been questioned.
It is immaterial to consider, whether the paper making such a disposition, bo strictly a will, or a testamentary paper in the nature of a will; though I think it is not *386 strictly a will. In either view, it must, before it can have any effect, be proved in a Court of Probate. Rich v. Cockrell, 9 Ves. 375.
The will, however, ought not to have been admitted to probate generally; for that might have the effect of giving it validity, as a will of lands. Although a probate is not necessary, with us, to give effect to' a will of land, yet, when admitted to probate as a will of lands, it cannot afterwards be questioned in any way, but that prescribed by the act of Assembly. Bagwell v. Elliott, 2 Rand. 190. In like manner, such a general probate would give it effect as a will of any choses in action, or any other property which the testatrix had, not to her separate use. For, after probate, the effect of the will, to the extent that probate is granted, cannot be controlled or questioned in any collateral way, or in any other Court. When the Ecclesiastical Court was about to grant a more extensive probate than was proper, the only remedy in England, was to apply to the Court of King’s Bench for a prohibition; which would have been useless, if the effect of the will, as to the subjects upon which it operated, could have been questioned after a general probate. Accordingly, prohibitions were not allowed to prevent the probate of wills of land, since such a probate, in England, would be merely void. Thus, in Scammel v. Wilkinson, 2 East. 552, a husband, having by his will authorised his wife to dispose of all his property by her will, to be made in his life-time, and she having in his life-time made her will, disposing, not only of his property, but hers also; an application was made to the Court of Probate, for a general probate; the Court of King’s Bench prohibited a probate, except as to the property which she was authorised by her husband’s will to dispose of, and so far as her will appointed executors, who might be executors of her brother, whose executrix she was. She had choses in action, and the object of this prohibition was to prevent such a probate as would pass those choses in action; as to which, she could not *387 make a will, her husband’s assent not extending to them. In consequence of this, her next of kin, and not her legateo, were entitled to these choses in action; she having survived her husband. Stevens v. Bagwell, 15 Ves. 140. In discussing this case in Chancery, it was insisted that the husband, besides authorising his wife to dispose of his property by her will, made in his life-time, had actually subscribed his name as a witness to her will; from which it was inferred that he had assented to all the dispositions of her will, as well in respect to her property, as to his; and that, so the will was valid as to the whole of its dispositions, and her legatee of her choses in action entitled. But Lord Eldon held that to be a question exclusively for the Court of Probate: that he was bound by their judgment; and as the probate did not embrace the choses in action of the feme covert, her next of kin were entitled to it, and not her legatee, she having died intestate as to that subject; and decreed accordingly.
The judgment in this case ought, therefore, to be reversed, and the will admitted to probate as a testament of all the personal property bequeathed to, and in trust for,
Mrs. West, by her father; and the increase and produce of such personal property, and the produce of the real property, except so far as such personal property, and the increase and produce thereof, may have been invested in real estate by her.
Judge Coalter:
I have some doubts whether the clause of. the will of John Hook, whereby he gives the remaining one-fifth of his estate to his executors for the benefit of his daughter, Margaret West, at the discretion of his executors, subject to a deduction of 200/. paid Thomas West, (which said 200/. he desires his executors to institute a suit for, and provided the same may be recovered, his executors are requested to dispose of the same to his said daughter, Mar *388 garet West, to be disposed of at her discretion,) may not |3e s0 construed, as to apply the latter words, “ to be dis~ posed.of at her discretion,” as well to the fifth part of his est,ale) as' to the 200/. in case it should be recovered. I cannot well perceive, any reason why that sum should be at her discretion, and not the other part of the estate. Suppose the clause had not directed a suit, but had stopped at that part of it, which directs a deduction of the 200/. (as he had directed advances to his other children to be deducted,) and had concluded “ to be disposed of at her discretion;” there could be no doubt that it would apply to the fifth part given her, although that is given to the executors for her benefit, at their discretion. This cannot mean that they were at liberty to keep it to themselves, if, in their discretion, they did not think proper to give it to her; but this discretion was resorted to, in order to preserve it for her separate use, which, under all the circumstances, was clearly his intention. If he had used words more plain and explicit as to her separate use, and had not directed a suit for the 200/. then no doubt could have existed that the executors would have been mere trustees for her separate use, with a power in her to dispose of the estate. But the 200/. are to be deducted at all events, and efforts are to be made to recover it back from the husband for the use of the wife; and thus the clause is involved in more obscurity, as to the application of the words giving a power to dispose of the property.
If the clause could bear the interpretation I have supposed, it might add to the other reasons which have satisfied me, that a separate estate was intended; and this might also have an important effect on another question, which, it is thought, we ought to decide in this case, to wit, whether she had power to devise the lands ?
I have no doubt, first, that a separate estate was given to her by the will of her father; and, secondly, that the testamentary paper in question, whether it is to be considered *389 a will to all intents and purposes, or only a disposition in nature of a will, passes the personal estate.
As to the real estate, I doubted whether, as the devisee who gets the greatest portion, and is interested in maintaining her power to devise, is not before us, we ought to decide that question now; but the other Judges seeming to think, that if the will is admitted to probate without restriction, it may more seriously affect and conclude the rights of the other devisees, than it can the rights of that one, if the probate is admitted merely as a will of personals, I have no objection to consider the question.
Could the clause under consideration, admit of a construction, that a power to dispose of this separate estate was given by the will of John Hook, then I indine to think that all the cases which I have had access to, go to shew that she might devise the lands. But they all, and especially the late cases, prove, that as to the personalty, the jus disponendi is incident to the right of property, whether the right to dispose of it is reserved, or not. But as to the real estate, they take a distinction which seems to place it, where no power of disposition is reserved by contract before marriage, or given by the instrument which creates the separate estate, (and which is this case, if the above construction is rejected) on the same footing with the real estate of the wife which she held before marriage, and over which she has reserved no such power, by marriSge articles; with this difference perhaps, that as to the latter, she may, after'marriage, by fine in England, or privy examination here, unite with her husband in a conveyance in trust or to uses, and reserve a power to dispose, &e.; whereas she might not be able even to do this, where an estate is given to her and her heirs, after marriage, to her separate use, without giving her a power of disposition. It seems to me that even this is left doubtful, in the case of Peacock v. Monk; but that case seems to me, at present, fully to settle the point, that where there is only a right to a separate estate in lands, without & power to dispose of *390 them, the jus disponendi does not follow the right of property, in such case.
A husband may consent that his wife shall bequeath her choses in action, &tc.; and if there is probate of such a will, it is good. But he cannot thus assent to her devise of her real estate which she had before marriage. In such case, the estate must be changed by a proper conveyance in trust, or to uses, before she can get the power of disposing of it. And where is the difference here ? Suppose this real estate had been devised to her by her father, absolutely, and not to her separate use. She could not have devised it, though it thus became her estate. It must descend. But another point may arise, which may have a serious bearing on this question. Is the estate and title in the executors as trustees ? They have made no conveyance, although certain lands were allotted to her. Now, many of the cases seem to countenance the power to devise, and declare the uses when the legal estate is in trustees. I am not disposed, however, to extend the doctrine in this country, beyond adjudged cases, and therefore, as at present advised, am inclined to think that she could not devise.
The testamentary paper must, therefore, be admitted to probate only as a will of personals, as the safest course at present to be taken.
As to this, it appears to me strange, that it should not be considered as a will to all intents; but the authorities seem doubtful on this point; and as the executor mi^ht not be considered such in a Court of Common Law, and be embarrassed in the execution of his trust in such cases; and as a grant of administration to him will have as good, and perhaps a better effect, than lettei’s testamentary (though how a Court of Law could say that letters testamentary were improperly gi’anted by the Court of probate, I cannot just now perceive) it may perhaps be best, now to establish the practice, and to say, that in such cases, the proper course will be to grant administration with the testamentary paper anhexed, to the person who is named *391 as executor, if he will take it; if not, to those to whom the property is bequeathed, or some of them.
Judge Cabell?
The first question in this case, is, whether the devise in the will of John Hook, of one-fifth part of his estate, to his executors, for the benefit of his daughter, Mrs. West, made it an estate for her separate use?
No particular phraseology is made necessary to the creation of a separate estate in a feme covert, even where it is created by deed; much less is it necessary, where the estate is created by will. In this respect, as in all others growing out of wills, the intention of the testator is to govern, unless it be opposed to some indexible rule of law. Can any man read this will, and believe that it was not the settled purpose of the testator to prevent Mr. West from having any interest in, or control over, the property devised for the benefit of his daughter ? In addition to the property being devised to trustees for her benefit, she then living apart from her husband, he even directs the husband, to be sued for 200/. he had given him in his life-time, and that his executors shall hold it, subject to the disposition of his daughter. His determination that all the property devised for the benefit of Mrs. West, should be her separate estate, is as dearly shewn by these circumstances, as if he had used the strongest terms commonly used for that; purpose.
The next question is, whether Mrs. West, had the power to dispose of this estate, by will, or by writing in the nature of a will; there being no power to that effect, expressly given by the will of her father ?
As to separate personal property, the authorities are numerous (they have been already cited by the Judges who preceded me;) and the doctrine has been long unquestioned, that a feme covert may dispose thereof, by will, even where there has been no agreement before marriage, and where no such power has been expressly given, by the in *392 strument creating the estate. And it is now considered, that this right of disposing of it, is a necessary incident to personal property. Fettiplace v. Gorges, 3 Bro. C. C. 8; and it is the same as to the increase and produce of separate estates, whether real or personal, so long as such increase or produce remains in personalty. Gore v. Knight, 2 Vern. 535.
As to the real estate; it would be a work of supererogation, if it were practicable, to attempt to reconcile the apparently conflicting decisions in the English books, as to the power of the wife over real estate, where there has been an agreement before marriage, that she should have the right to dispose thereof. That is not this case; for here, there was no agreement on the subject, before marriage, and the will of Mr. tloole, is silent on the subject. I think the decisions have gone full far, in allowing to the wife, in cases like the present, to dispose of even personal property, by will; for the right to dispose by will, cannot be said to be at all necessary to the enjoyment of property; at least it is not more necessary to the enjoyment of.personal, than of real property. I am not disposed to extend the decisions farther than they have gone already; and I believe there is no instance in the books, where, in a case like the present, the will of the wife, as to real estate, has been supported. I can perceive no reason for giving her such power, as to her separate estate, which would not equally apply to any other real estate whatever; held by her. Considering the influence which the husband commonly has over the wife, to allow such a power to the wife, would be, in most cases, to subject the property to the will of the husband.
These remarks do not apply to cases, where a right to dispose of real estate by will, is expressly given to the wife, by the instrument creating the trust estate; for the power that creates the estate, may prescribe, at pleasure, the rights to be enjoyed with it.
Mrs. West, therefore, had not, in my opinion, any power to dispose of her real estate by her will; and it *393 ought not to have been admitted to probate, as a will of lands.
The judgment is to be reversed, and the following is to be entered as the judgment of the Court:
The Court is of opinion, that the paper writing in the record, exhibited as the will of Margaret West, deceased, ought not to have been admitted to a general and unlimited probate; and that, therefore, the judgment of the Superior Court, affirming that of the County Court, is erroneous. Therefore, it is considered, that the said judgment of the Superior Court be reversed and annulled, and that the appellant recover against the appellee his costs by him in the prosecution of his appeal aforesaid here expended. And the Court proceeding to give such judgment as the said Superior Court ought to have given, it is farther considered, that the said judgment of the County Court be reversed, and that the appellant recover against the appellees his costs by him expended in the prosecution of his appeal aforesaid, to the said Superior Court: and that the said paper writing be admitted to probate as a valid testamentary disposition of so much of the personal property, bequeathed by the will of John Ilook, to and in trust for the benefit of the said Margaret West, and of the increase and produce thereof, and of the real property devised by John Hook, in trust for her benefit, as has not been invested in real property by or with the assent of the said Margaret West; and that letters of administration, with the said testamentary paper annexed, of so much of the property as is above declared t,o be well disposed of, should be granted to the persons therein named as executors, or to such one of them as may apply therefor; and in case neither of them should so apply, then to some person or persons beneficially interested in the dispositions made by the said testamentary paper; or if none such should apply, then to such person or persons as the Court may think proper; and that the appellees recoycr against, the appellant, their costs by them in the County Court expended.